UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MANHEIM AUTOMOTIVE FINANCIAL
SERVICES, INC.,

                        Plaintiff,                    REPORT & RECOMMENDATION

                 -against-                         09-CV-4357 (NGG) (RER)

FLEET FUNDING CORP., TEHCO
REALTY DEVELOPMENT CORP., ARIEL
TEHRANI, SAEID TEHRANI, and SHALA
TEHRANI,

                        Defendants.
---------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

INTRODUCTION

Plaintiff Manheim Automotive Financial Services, Inc. ("MAFS") brought this action against defendants Fleet Funding Corp. ("Fleet Funding"), Tehco Realty Development Corp. ("Tehco"), Ariel Tehrani, Saeid Tehrani, and Shala Tehrani (collectively, "Defendants") alleging that Defendants breached an Inventory Finance Loan and Security Agreement ("Security Agreement"), a Promissory Note, and a related series of guaranties (the "Guaranties") by refusing to pay MAFS in accordance with those loan documents. (Docket Entry No. 1, Complaint ("Compl.").) The Clerk of Court entered a notice of default against all Defendants on December 14, 2009, after the Defendants failed to file an answer or other responsive pleading. (Docket Entry No. 9, Notation of Default.)

On December 31, 2009, the Honorable Nicholas G. Garaufis entered a default judgment against the Defendants and referred the issue of damages to me for a report and recommendation. (Docket Entry Dated 12/31/09, Order.) On January 12, 2010, I ordered MAFS to supplement the

record, and MAFS filed revised records on February 9, 2010, pursuant to an extension of time. (Docket Entry Dated 1/25/2010, Order.) On February 25, 2010, I conducted an evidentiary hearing by phone. (Docket Entry Dated 2/25/10, Minute Entry.) The Defendants did not submit any material in opposition to MAFS's filings and did not appear at the hearing.

## FACTS

MAFS provides floor-plan financing for independent and rental auto dealers. (Compl. ¶ 1.) Fleet Funding operates a rental auto dealership. (Compl. ¶ 2.) On June 15, 2007, MAFS entered into a Security Agreement with Fleet Funding and acquired a security interest in Fleet Funding's inventory. (Docket Entry No. 11-1, Pl.'s Ex. A ("Security Agreement") at 17.) Fleet Funding executed a Promissory Note on June 15, 2007, promising to pay MAFS the principal sum of $1,000,000.00 plus interest on the unpaid principal balance. (Docket Entry No. 11-1, Pl.'s Ex. A ("Promissory Note") at 32.) Tehco, Ariel Tehrani, Saeid Tehrani, and Shala Tehrani (collectively, "Guarantors") are guarantors of the Security Agreement and Promissory Note. (Compl. ¶ 7.) The Guaranties ensure prompt payment of the full amount of Fleet Funding's indebtedness to MAFS when due. (Docket Entry No. 11-1, Pl.'s Ex. A ("Guaranties") at 49.) On or about July 2, 2009, MAFS recorded a UCC-1 Financing Statement to perfect its security interest in the collateral designated in the Security Agreement. (Docket Entry No. 11-1, Pl.'s Ex. A, Filing Statement at 37.)

MAFS filed this action on October 9, 2009. (Compl.) MAFS alleges that Fleet Funding has defaulted under multiple provisions in the Security Agreement, thereby prompting acceleration of the total outstanding amount. (Compl. ¶ 15.) As of September 30, 2009, Fleet Funding has neither remitted the accelerated balance nor surrendered the collateral to MAFS.

2

(Compl. ¶ 27.) The guarantors have similarly failed to make payment on the amounts owed to MAFS. (Compl. ¶ 24.)

## DISCUSSION

I. Standard of Review for Default Judgments

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). If a plaintiff's allegations state a claim upon which relief can be granted, then damages "must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Id.* at 158; *see also S. Katzman Produce, Inc. v. Won*, No. 08-cv-2403, 2009 U.S. Dist. LEXIS 69465, at *6 (E.D.N.Y. Aug. 7, 2009) (permitting review of "detailed affidavits and documentary evidence" instead of a hearing) (quotations omitted).

In this case, none of the Defendants filed anything in opposition to MAFS's Motion for Default Judgment or supplemental evidence, despite opportunity to do so. (Docket Entry Dated 1/25/10, Order.) The Court must nevertheless independently determine that MAFS's claimed damages have a basis. *See Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). The Court made this determination upon a review of documentary submissions and in an evidentiary hearing by phone. (Docket Entry Dated 2/25/10, Minute Entry.)

II. Breach of Contract Claims

  A. Choice of Law Provisions

In this case, both the Security Agreement and Promissory Note contain choice-of-law

provisions selecting Georgia law.[1] The Guaranties contain choice-of-law provisions selecting New York law.[2] A federal court exercising diversity jurisdiction applies the law of the forum state, including its choice-of-law rules, to determine the applicable substantive law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).

Georgia has sufficient contacts with this transaction because MAFS's principal place of business is located in Atlanta, Georgia. *See Wombles Charters, Inc. v. Orix Credit Alliance, Inc.*, No. 97-cv-6186, 1999 U.S. Dist. LEXIS 10566, at *2–3 (S.D.N.Y. July 14, 1999) (applying the contractual choice-of-law provision in the security agreement when one party's principal place of business is in that state). No allegations of fraud or public policy violations have been made. Therefore, this Court will apply the intentions of the parties and interpret the substantive portions of the Security Agreement and Promissory Note under Georgia law. *See Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987) ("New York law requires the court to honor the

---

[1] "This agreement shall be governed by the internal laws of the state of Georgia where Lender maintains offices. Jurisdiction for its enforcement shall exist in the courts of Georgia." (Security Agreement ¶ 21, Applicable Law and Consent to Jurisdiction.)

"This Note and all transactions hereunder...shall be governed by, construed under and enforced in accordance with the laws of the State of Georgia." (Promissory Note at 18.)

[2] "This Guaranty shall be governed by the laws of the state of the principal place of business of Dealer." (Guaranties ¶ 5(d).) Fleet Funding, a New York corporation, is defined as the Dealer. (Guaranties ¶ 1(a).)

parties' choice insofar as matters of substance are concerned...[t]he contractual choice of law provision is deemed to import only substantive law, however, not procedural law"). The Guaranties are governed by New York law, but their interpretation does not affect Fleet Funding's liability under the Security Agreement and Promissory Note, which in turn determines the Guarantors' liabilities. *See, e.g., HSH Nordbank AG N.Y. Branch v. Swerdlow*, No. 08-cv-6131, 2009 U.S. Dist. LEXIS 109379, at *18 (S.D.N.Y. Nov. 23, 2009) ("the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee").

  B. <u>MAFS's Rights Under the Security Agreement, Promissory Note, and Guaranties</u>

A security agreement that gives a creditor a security interest in collateral is interpreted as any other contract. *See Kubota Tractor Corp. v. Citizens & Southern National Bank*, 403 S.E.2d 218, 224 (Ga. Ct. App. 1991). Damages are awarded in breach-of-contract cases to place the injured party "in the position he would have been in if the contract had not been breached." *Carolina Cas. Ins. Co. v. R.L. Brown & Assocs.*, No. 04-cv-3537, 2006 U.S. Dist. LEXIS 71056, at *43–44 (N.D. Ga. Sept. 29, 2006) (citations omitted). Damages for breach of contract "must be such as could be traced solely to breach, be capable of exact computation, must have arisen according to the usual course of things, and be such that the parties contemplated as a probable result of such breach." *Burch v. Chase Manhattan Mortg. Corp.*, No. 07-cv-0121, 2008 U.S. Dist. LEXIS 76595, at *47 (N.D. Ga. Sept. 15, 2008) (quoting O.C.G.A. § 13-6-2). A secured creditor may either sue on the note or foreclose on the collateral. *Sadler v. Trust Co. Bank of South Georgia*, 178 Ga. App. 871, 872 (Ga. Ct. App. 1986). When a debtor fails to make timely payments that have become due, a secured creditor is entitled to accelerate the entire balance due

5

pursuant to the terms of the security agreement. *Lewis v. Citizens & Southern Nat. Bank*, 174 Ga. App. 847, 847 (Ga. Cit. App. 1985).

MAFS alleges that Fleet Funding defaulted under several specific provisions of the Security Agreement, which states that the "[l]ender may terminate or suspend financing under this Agreement...[u]pon the occurrence of an Event of Default." (Security Agreement ¶ 13(a).) MAFS also alleges that the Guarantors have violated the terms of the Guaranties, which state "[t]he Guarantor hereby unconditionally and absolutely guarantees the full and prompt payment when due, whether by acceleration or otherwise." (Guaranties ¶ 2(a)(i).) The Guarantors have allegedly failed to make payments of the total accelerated amounts owed. (Compl. ¶ 24.) Despite MAFS's demands, Fleet Funding has failed and refused to make the collateral available to MAFS for repossession. (Compl. ¶ 20.)

First, MAFS alleges that Fleet Funding failed to timely make its scheduled payments. The Security Agreement unambiguously states that an event of default includes "a default by Borrower in the payment or performance of any obligation or agreement under this Agreement." (Security Agreement ¶ 14(a).) Second, Fleet Funding allegedly sold the collateral to consumers as inventory. The Security Agreement plainly states that "[b]orrower may rent the Vehicles in the ordinary course of Borrower's business," but that "[b]orrower shall not sell or otherwise dispose of the Vehicles, or hold the Vehicles as inventory for sale." (Security Agreement ¶¶ 6(a), 6(b).) Next, another creditor's lien was allegedly placed on certain collateral. The Security Agreement provides that an event of default occurs by "an assignment by Borrower or any Guarantor for the benefit of Creditors." (Security Agreement ¶ 14(d).) MAFS further alleges that Executive Motors, another guarantor, filed a voluntary bankruptcy petition, which is an

6

express event of default in the Security Agreement. (Security Agreement ¶ 14(c).) Finally, MAFS has deemed itself insecure. (Security Agreement ¶ 14(h).) These defaults prompted MAFS to accelerate the entire outstanding amounts due from Fleet Funding, in accordance with both the Security Agreement and Promissory Note.[3] (Compl. ¶ 15.) Because Fleet Funding has not come forward with any evidence challenging MAFS's allegations, this Court must accept all well-pleaded allegations as true.

C.  Principal Due

According to MAFS's most recent submissions, Defendants currently owe $416,305.21 in principal as of January 31, 2010.[4] (Docket Entry No. 17, Supplemental Declaration in Support of Default Judgment ("Ganas Decl.") ¶ 10.) The current principal owed on each vehicle is explained by comparing the original principal amount with the regular payments made by Fleet Funding on each vehicle. (Ganas Decl. ¶ 9.) As explained at the evidentiary hearing, the Floor Plan Detail Statement includes all vehicles for which amounts are still owed after the execution of the Security Agreement. (Docket Entry No. 19, Transcript of Proceedings Held on 2/25/2010 ("Transcript") at 3:20–23, 4:2–3.) In a description of the advances made, the Promissory Note states that "[t]he aggregate unpaid principal amount shown on any monthly statement shall be

---

[3] "Lender may, in its discretion, accelerate the entire outstanding amount due from Borrower under this Agreement and may take immediate possession of Vehicles and other Collateral." (Security Agreement ¶ 16.)

"Upon the occurrence of an Event of Default, the entire principal balance outstanding...plus accrued interest shall...mature and be immediately due and payable." (Promissory Note at 17.)

[4] The discrepancy between this amount and $423,235.65, the grand total presented in the Detail Statement, is explained by the $6,930.44 received by MAFS on February 2, 2010. (Ganas Decl. ¶ 10.)

rebuttable presumptive evidence of the principal amount owing and unpaid on this Note." (Promissory Note.) Accordingly, I respectfully recommend that MAFS be awarded $416,305.21 in outstanding principal.

    D.    Interest Due

Because Georgia law applied to the breach-of-contract claims, Georgia law determines any prejudgment interest awards. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) ("under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim") (citations omitted). Under Georgia law, three types of interest accrue on money obligations. First, a plaintiff is entitled to interest accrued on the principal as provided by contract. *See* O.C.G.A. § 7-4-2(a)(1)(B) ("Where the principal amount is $250,000.00 or more...the parties may establish by written contract any rate of interest. . . to be paid by the borrower"). A debtor in default, however, who becomes liable for the accelerated amount of its loan does not owe future interest on that loan. *See* O.C.G.A. § 7-4-2(b)(1) ("Upon acceleration of the maturity of any loan. . . unearned interest shall be rebated to the debtor in such amount as would result in the rate of interest earned being no greater than the rate of interest established by the original contract"); *Bryant v. Kenerly*, 518 S.E.2d 172, 174 (Ga. Ct. App. 1999) (prohibiting interest "where the interest installments mature after the principal itself has fallen due"). In other words, if a debt matures early, as it does in the event of default when the entire balance is accelerated, the creditor is not entitled to the interest it would have received under the full life of the loan. *See McDaniel v. Fulton Nat'l* Bank, 395 F. Supp. 422, 427 (N.D. Ga. 1974) ("By forcing plaintiff to pay the total amount of interest over a shorter period than was originally anticipated, defendant

8

would be receiving a higher return on his money and effectively increasing the annual percentage rate"). Second, a plaintiff is entitled to receive prejudgment interest, which accrues from the date of default until the date this Court enters final judgment. *See Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 299 (Ga. Ct. App. 1993) (awarding mandatory prejudgment interest under O.C.G.A. § 7-4-15 to amounts due on a promissory note and guaranty because they "were ascertainable under the terms of the instruments") (citations omitted). Finally, a plaintiff may receive any post-judgment interest that accrues on any unpaid portion of the final judgment. Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see Bryant Motors v. Blue Bird Body Co.*, No. 06-cv-353, 2009 U.S. Dist. LEXIS 52287, at *3 (M.D. Ga. June 22, 2009) (contrasting post-judgment interest, which "serves to reimburse the claimant for not having received the money in hand on that day," with prejudgment interest, which "forms part of the actual amount of a judgment on a claim").

MAFS originally sought "interest accruing on the principal debt at the per diem rate of $73.85 in accordance with the Security Agreement and Promissory Note." (Compl. ¶ 34) (Docket Entry No. 11, Declaration In Support of Default Judgment ("Campbell Decl.") ¶ 9. ) At this rate, MAFS would be due "per diem interest in the sum of $5,834.15 as of September 30, 2009." (Docket Entry No. 11, Proposed Default Judgment.) After the Court requested further documentation to explain the claimed amounts, MAFS submitted requests for "per diem interest in the sum of $18,705.45 as of January 31, 2010." (Ganas Decl. ¶ 7) (Docket Entry No. 17-3, Pl.'s Ex. C ("Revised Proposed Default Judgment").) As explained at the evidentiary hearing, this amount comes from adding the interest due from January 1, 2010 through January 31, 2010,

9

in the amount of $2,278.67 to $16,426.78 in past-due interest. (Transcript at 8:6–8.)

MAFS is entitled to interest accrued on the principal at the contractual default rate from the date Fleet Funding breached the Security Agreement until the date Judge Garaufis entered default judgment. To determine the date Fleet Funding breached, I divided the original amount in interest sought ($5,834.15) by the per diem rate provided ($73.85), which yielded 79 days. From this I deduced that July 13, 2009 was the date Fleet Funding defaulted. The Promissory Note plainly states that in the event of default, any advance made to Fleet Funding "shall bear interest at a rate equal to the Interest Rate[5] plus three percent (3.0%) until paid in full." (Promissory Note ¶ (c).) As explained at the evidentiary hearing, 6.25% was the most recent interest rate applied to the outstanding principal. (Transcript at 5:20–22, 8:12–13.) The Note therefore provides for a 9.25% annual interest rate in the case of default, which amounts to 0.025 percent per day. Applying this interest rate to the outstanding amount of principal ($416,305.21) from July 13, 2009, the date Fleet Funding defaulted, until December 31, 2009, the date Judge Garaufis entered default judgment, yields $18,040.84 in contractual prejudgment interest. *See Gray v. King*, 270 Ga. App. 855, 856 (Ga. Ct. App. 2004) (accruing interest under O.C.G.A. § 7-4-15 "from the time entitlement attaches"). Thereafter, prejudgment interest should accrue on the damages award of $434,346.05 ($416,305.21 in principal + $18,040.84 in contractual interest) at the statutory rate of 7% until the date that final judgment is entered. *See, e.g., Bryant Motors*, 2009 U.S. Dist. LEXIS 52287, at *6–8 (citing O.C.G.A. § 7-4-2(a)); *Ware v. Renfroe*, 231 Ga. App. 529, 534 (Ga. Ct. App. 1998) (awarding prejudgment interest as a matter of law

---

[5] The Interest Rate is calculated by adding an applicable percentage, specified as 3.00% in the Promissory Note, to the Index Rate, or prime rate. (Security Agreement at 6, Definitions.)

when "the amount of rent due was fixed and ascertainable under the rental agreement"). By my calculations, $6,747.24 in statutory prejudgment interest accrued at a rate of 0.019 percent per day from January 1, 2010 to this date, March 22, 2010. This results in a total award of $441,093.29. Furthermore, I recommend that an additional $82.53 be added for each day between (but not including) today, March 22, 2010, and entry of final judgment. *See* O.C.G.A. § 13-6-3 ("In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery").

    E.    Fees Due

MAFS seeks $8,185.00 in unpaid dealer/loan fees through January 31, 2010. (Ganas Decl. ¶ 7.) The Detail Statement reports $15 per vehicle in fees due. This rate requires some explanation, as the Advance/Fee Schedule attached to the Promissory Note provides for only a $10 monthly fee per vehicle.[6] As explained at the evidentiary hearing, MAFS increased its vehicle fee to $15.00 per month from $10.00 per month in January 2009, as it was authorized to do by the express terms of the Promissory Note. (Advance/Fee Schedule ¶ 8.) Adding all the fees due yields $945.00. Combining this amount with $490.00 in past-due dealer fees and $6,750.00 in past-due loan fees yields a total of $8,185.00. (Ganas Decl. ¶ 12.) I respectfully recommend that MAFS be awarded $8,185.00 in outstanding fees.

III.    Attorneys' Fees and Costs

    A.    Choice of Law

As mentioned above, "[u]nder New York choice of law principles, contractual choice of

---

[6] This monthly fee is listed in addition to a one-time $70 charge per car, a $75 late fee, and a $25 NSF fee. (Promissory Note at 4.)

law clauses only apply to substantive issues; New York follows its own procedural rules." *See RLS Associates LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 214 (S.D.N.Y. 2006) (citing *Educ. Res. Inst., Inc. v. Piazza*, 794 N.Y.S.2d 65, 66 (N.Y. App. Div. 2005)). Statutes that allow recovery of attorneys' fees are substantive for *Erie* purposes. *RLS Associates*, 464 F. Supp. 2d at 213. However, "[a] rule may be substantive for purposes of *Erie* analysis, but procedural under a state's choice of law analysis." *RLS Associates*, 464 F. Supp. 2d at 214–15. This Court must apply the choice-of-law rules of New York to determine if the Georgia rule for attorneys' fees applies.[7]

New York courts classify legal rules as "substantive" when they relate closely to an underlying right and "procedural" when they deal with the remedy by which that right is enforced. *RLS Associates*, 464 F. Supp. 2d at 217–18 (citing *Tanges v. Heidelberg N. Am., Inc.*, 710 N.E.2d 250 (N.Y. 1999)) (discussing the New York Court of Appeals's analysis of substance and procedure in the choice of law context). The Georgia attorneys' fee rule tailors the remedy in a breach of contract action, not the right itself. *See Bensen v. American Ultramar Ltd.*, No. 92-cv-4220, 1997 WL 317343, at *15 (S.D.N.Y. June 12, 1997) (describing the American rule on attorneys' fees as "a fundamental component of the state's procedural law"). It is not a specific law attached to a particular cause of action, but a general rule applicable to all litigation involving loan documents. *Contra Tanges*, 710 N.E.2d at 58 (determining that a Connecticut statute setting the time limits "qualified the right" to bring a products liability

---

[7] Georgia law construes a promissory note provision that provides for attorneys' fees without specifying any percentage to mean fifteen percent of the first $500.00 of principal and interest owing and ten percent of the amount of principal and interest remaining in excess of that $500.00. *See, e.g., TermNet Merchant Services, Inc. v. Phillips*, 588 S.E.2d 745, 747 (Ga. 2003) (applying § 13-1-11(a)(2) to contracts evidencing indebtedness).

action). Rather, the Georgia rule establishes a detailed procedure for computing attorneys' fees in certain kinds of contracts. *See, e.g., Trust Assoc. v. Snead*, 559 S.E.2d 502, 504 (2002) (listing preconditions). Accordingly, New York law governs the procedural issue of attorneys' fees and costs in this breach of contract action.

B. Attorneys' Fees

The Court has broad discretion to set reasonable attorneys' fees. *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117–18 (2d Cir. 2008) (determining a "presumptively reasonable" fee by multiplying a reasonable hourly fee by a reasonable number of expended hours). The party requesting attorneys' fees must show the reasonableness and necessity of rates charged and hours spent. *See Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984) (requiring fee applicant to produce evidence in addition to the attorneys' own affidavits that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The fee applicant must also provide contemporaneous time records that show the date, the hours expended, and the nature of the work done by each attorney. *See, e.g., Aiello v. Town of Brookhaven*, No. 94-cv-2622, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005) (permitting records that do not describe "in great detail how billable time was spent" as long as the records "identify the general subject matter of time expenditures") (citation omitted).

1. MAFS's Attorneys Submitted Adequate Time Records

MAFS seeks $21,661.80 in attorneys' fees pursuant to specific provisions in the Security

13

Agreement and Promissory Note.[8] (Revised Proposed Judgment.) In support of its application, MAFS submitted a declaration by Donald S. Campbell and invoices detailing the work done in this matter by the law firms of Husch Blackwell Sanders LLP and Danzig Fishman & Decea. The invoices summarize the legal services provided and costs incurred from September 8, 2009 through February 9, 2010 and specifies the date, hours expended, and nature of work done by each attorney and paralegal. (Docket Entry No.17-2, Pl.'s Ex. B ("Revised Attorneys' Fees").) I find that the invoices sufficiently identify the subject matter of each time expenditure.

2. MAFS's Attorneys Charged a Reasonable Hourly Fee

Hourly billing rates should be "calculated according to the prevailing market rates in the relevant community." *Clarendon Nat'l Ins. Co. v. Compuplan, LLC*, No. 03-cv-7966, 2006 U.S. Dist. LEXIS 88161, at *14 (S.D.N.Y. Dec. 5, 2006) (citing *Blum*, 465 U.S. at 895 n.11); *Polk v. New York State Dep't of Correction Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (defining the relevant community as "the district in which the Court sits"). It is important to note that the Second Circuit recognizes a difference between the Southern and Eastern Districts when awarding attorneys' fees. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 177 (2d Cir. 2009) (reducing attorney fee award to reflect the lower hourly rates in the Eastern District). In the Eastern District, courts have awarded $200–$375 per hour for partners, $200–$325 per hour for associates, and $75–$80 per hour for paralegals. *See, e.g., Jacobson v. Peterbilt Elec.*

---

[8] "Borrower shall pay all expenses and reimburse Lender for any expenditures, including reasonable attorneys' fees and legal expenses, in connection with Lender's exercise of any of its rights and remedies under this Agreement." (Security Agreement ¶ 16.)

"Borrower shall pay Lender its reasonable attorney's fees, together with all court costs." (Promissory Note at 18.) No Defendant has submitted any evidence challenging MAFS's claims.

*Contracting, Inc.*, 553 F. Supp. 2d 211, 216 (E.D.N.Y. 2008) (collecting cases of fees and costs in the Eastern District).

MAFS seeks $21,661.80 in legal fees and disbursements. (Ganas Decl. ¶ 14.) As explained at the evidentiary hearing, three attorneys billed as partners: Richard A. Danzig at $500 per hour, Chris Rockers at $431 per hour, and Stephen Parish at $385 per hour.[9] Buck Dougherty billed as an associate at $226 per hour before January 1, 2010, and $234 per hour afterwards. He has practiced commercial law since 2005. Donald S. Campbell billed as an associate at $300 per hour. He has been practicing for 16 years. Jennifer Liu was admitted in 2005 and also billed as an associate at $250 per hour. Finally, Kimberly Graves, a paralegal, billed at $135 per hour.[10]

MAFS did not submit proof that its attorneys' requested rates accord with the rates charged in the Eastern District of New York. *See Blum*, 465 U.S. at 895–96 n.11. The rates charged by the partners in this case exceed Eastern District rates, as does the rate charged for Graves's paralegal services. The attorneys justified their relatively excessive hourly fees by arguing that due to their expertise in such cases, they spent less hours than other firms would have spent litigating this case. I find this argument compelling. It is quite reasonable for a client to select out-of-district counsel with higher hourly fees, but considerable experience in litigating

---

[9] No billing rates are listed in the submissions, and several attorneys' billing rates were confirmed at the evidentiary hearing. (Docket Entry Dated 2/25/10, Minute Entry.) The Court calculated Rockers's $431 rate by dividing the amount charged ($301.70) by the hours reported (0.7) and Parish's $385 rate by dividing the amount ($192.50) by the hours (0.5). (Revised Attorneys' Fees.)

[10] The Court calculated Kimberly Graves's billing rate by dividing the amount charged ($40.50) by the hours reported (0.3). (Revised Attorneys' Fees.)

particular types of cases with the hope of saving money overall. Accordingly, I find the requested rates reasonable.

3. MAFS's Attorneys Expended a Reasonable Number of Hours

Courts should "use their experience with cases...[and] the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case." *Fox Indus., Inc. v. Gurovich*, No. 03-cv-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (citation omitted); *Bourgal v. Atlas Transit Mix Corp.*, No. 93-cv-0569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996) ("The number of hours spent on litigation and the staffing pattern utilized is unreasonable if it is excessive, redundant or otherwise unnecessary") (citation omitted).

This is a default action in which the Defendants did not dispute any of MAFS's motions. There is evidence of efforts to settle the matter. (Revised Attorneys' Fees, entries dated from 1/20/2010 through 1/25/2010.) I find the hours expended reasonable due to the factually complex and document-intensive nature of the case. (Transcript at 16:20–25.) As explained at the hearing, the attorneys spent less overall time working on this case although they charged a higher hourly rate, resulting in an overall cost-effective approach. (Transcript at 17:7–8.) MAFS hired counsel located in Memphis and Chatanooga, Tennessee, close to its corporate headquarters in Atlanta, Georgia, and counsel located in New York, to litigate the case in the Eastern District. Accordingly, I respectfully recommend that MAFS be awarded $21,661.80 in attorneys' fees.

4. MAFS's Attorneys Calculated Reasonable Costs

The Court usually awards "reasonable out-of-pocket expenses incurred by the attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d

16

Cir. 1998) (quotations and citations omitted). MAFS's disbursements include filing fees, photocopy charges, and process service fees, totaling $609.40. (Revised Attorneys' Fees.) I verified these reported amounts and find these costs reasonable. Accordingly, I recommend that MAFS be awarded costs in the amount of $609.40.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that MAFS be awarded $416,305.21 in principal, $24,788.08 in prejudgment interest accrued through March 22, 2010, $8,185.00 in outstanding fees, $21,661.80 in attorneys' fees, $609.40 in costs and disbursements, for a total award of $471,549.49, plus interest at the legal rate in effect on the date of this judgment. I also recommend that the amount of prejudgment interest be increased by $82.53 every day between the date of this Report and the entry of final judgment.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Nicholas G. Garaufis within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 (amended Dec. 1, 2009). MAFS is directed to serve copies of this Report and Recommendation upon Defendants and promptly file proof of service with the Clerk of Court.

**Dated: March 22, 2010**
    **Brooklyn, New York**

    *Ramon E. Reyes Jr*
    **Ramon E. Reyes, Jr.**
    **United States Magistrate Judge**